Meyer, J.
(dissenting). I would reverse the order of the Appellate Division and reinstate the order of Special Term denying defendant’s motion under CPLR 3211 (subd [a], pars 5, 7).
The complaint alleges that in 1964 defendant city negligently issued a certificate of occupancy for a multiple residence located at 197 Ravine Avenue, that the building did not conform to the filed plans or to the ordinances of the city in that it was built with defective and improper fire stops, that in reliance on the certificate of occupancy plaintiff purchased the building in February, 1969, that on January 15, 1973 fire destroyed the building without any fault of plaintiff, that a notice of claim was filed on April 11, 1973 and that more than 30 days had elapsed after the filing of the claim without any payment being made by the city.
Though Rottkamp v Young (21 AD2d 373, affd on opn at Appellate Division 15 NY2d 831) holds that, because the decision whether to do so is discretionary and quasi-judicial, no action will lie for refusal to issue a building permit, that holding does not bar the instant action. The distinguishing feature is that we deal in this action with a certificate of occupancy for a multiple residence, as to which the Legislature has expressly provided, in subdivision 5 of section 302 of the Multiple Residence Law that “A certificate, a record in the department, or a statement signed by the head of the department that a certificate has been issued, may be relied upon by every person who in good faith pur *1014 chases a multiple dwelling”. I agree with the holdings of the Appellate Division, Fourth Department, in Gordon v Holt (65 AD2d 344, mot for lv to app den 47 NY2d 710) and Sexstone v City of Rochester (32 AD2d 737), and of the Second Department in Doyle v 800, Inc. (72 AD2d 761,762) that a municipality may in light of the Multiple Residence Law provision be held responsible for its negligent misrepresentation to a plaintiff who establishes his reliance in good faith on the certificate of occupancy. Accordingly, the first cause of action is valid and, that being so, the complaint could not be dismissed under CPLR 3211 (subd [a], par 7) (Siegel, New York Practice, § 265; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3211.38).
Nor can it properly be dismissed under subdivision 5 on Statute of Limitations grounds. The Appellate Division held that the word “event” as used in the clause “the happening of the event upon which the claim is based” contained in section 50-i (subd 1, par c) of the General Municipal Law, must “be deemed to be the issuance of the certificate of occupancy in July, 1964, not the destruction of the building by fire in 1973”. It reached that conclusion on the basis of its own earlier decision in Doyle v 800, Inc. (72 AD2d 761, supra), which in turn relied upon the review by the Fourth Department in Erickson v Town of Henderson (30 AD2d 282) of the legislative history of the act (L 1959, ch 788) by which section 50-i was added to the General Municipal Law. Simply put, the Erickson review of legislative history was not addressed to the instant question and Doyle’s use of it without closer evaluation of the issue in Erickson is clearly erroneous. Unless legislative intent is to be changed by judicial fiat, intentional or unintentional, Doyle’s error should now be corrected by a holding that, as the Legislature clearly intended, the word “event” in the quoted clause is synonymous with “accident” and limitations, therefore, do not begin to run until “the negligent act produced injury to the plaintiffs” (Sexstone v City of Rochester, supra).
Under consideration in Erickson was the fact that a cause of action for wrongful death did not under prior law “arise” or “accrue” until appointment of an estate representative (Christian v Village of Herkimer, 5 AD2d 62, *1015 affd 5 NY2d 818). Erickson did not define what was meant by the phrase “the happening of the event upon which the claim is based.” Rather it noted, quoting from the legislative note set forth at page 21 of the Report of the Joint Legislative Committee on Municipal Tort Liability (NY Legis Doc, 1959, No. 36), that while the period of limitations as to all municipalities had been one year, under some of the governing statutes the period ran from the happening of the event and under others from accrual of the cause of action, and that the Legislature’s purpose was to eliminate uncertainty by making the period run in all cases from the happening of the event, that being the uniform interpretation of “accrual of the cause of action” in any event. The effect was to reduce the period of limitations as to municipalities previously governed by “accrual” because under the revision proposed the limitations period would begin to run with the injury-causing event and would not be tolled by the time necessary to obtain appointment of a representative. The result reached in Erickson was fully consistent with the legislative intent evidenced by the Joint Committee Report, but was in no way dependent upon a definition of the word “event”, nor was there any need in that case to define that word, since the action was not begun until five days short of the second anniversary of decedent’s death.
The result reached in Doyle and in the instant case is, however, wholly inconsistent with the legislative understanding of the way in which.the word “event” was used. The study upon which the proposed new section 50-i was based appears in the report beginning at page 51 and contains irrefutable evidence that the words “happening of the event” were used to mean the injury-producing event, i.e., the time of the accident, not of the negligent act. Thus the conclusion of the study (at pp 60-62) stated that as to the time within which an action must be brought the common provision was one year but that period ran variously from (a) the date of the accident, (b) the accrual of the cause of action, or (c) the filing of a notice of claim. It then noted that “such decisional law as exists uniformly holds that the provision ‘from the date the cause of action accrued’ is to be interpreted as ‘from the date of the accident’ ” (at pp 61; emphasis supplied), that under subdivision 5 of section 50-e *1016 of the General Municipal Law application for permission to file a late claim “must be made ‘within the period of one year after the happening of the event upon which the claim is based’, i.e., from the time of the accident” (at p 61; emphasis supplied), and that the time to make the latter application “begins to run, therefore, at the same time as does the one year limitation upon the time in which an action must be brought” (id.). Thus, in extending the period to one year and 90 days the Legislature was allowing for the longest notice of claim period provided for in any statute, but providing for a uniform starting time in order to obviate the confusion in prior statutory provisions (id., at pp 13, 17, 60-62), that starting time being the date of the accident (accord Phillips v Village of Waterford, 48 AD2d 745, 746 [“the happening of the event causing the damage”] ; Cota v Madison Cent. School Dish, 89 Misc 2d 646, 648, affd 62 AD2d 1083 [“The Legislature intended the time limitation * * * to commence * * * when the accident occurred”]).
Nor can it properly be argued that the legislative history should not be referred to because the word “event” is unambiguous. In the first place, the word is modified by the phrase “upon which the claim is based.” Since there can be no claim without both breach of duty and injury, “the event” (emphasis supplied) upon which a claim is based is, logically, the time of the injury or accident, as the Legislature intended, and as we, in other contexts have held (Bloomfield Bldg. Wreckers v City of Troy, 41 NY2d 1102, 1103 [“the cause or causes of action, if any, accrued at the time of the sustaining of injury”]; Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 300 [“It is only the injury to person or property arising from negligence which constitutes an invasion of personal right, protected by law, and, therefore, an actionable wrong”] [emphasis in original]). Ignoring the article “the”, one could perhaps argue that “the event” is the combination of breach and injury, but by no stretch of logic can it be said that “event” means only and unambiguously the breach of duty without more. Moreover, as we held in New York State Bankers Assn. v Albright (38 NY2d 430, 436): “It has been said often, but with less than meticulous analysis, that an ‘unambiguous’ *1017 statute permits of no inquiry into legislative intention (see, e.g., McCluskey v Cromwell, 11 NY 593, 601; accord, e.g., Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, 304, app dsmd 368 US 12; see, generally, McKinney’s Cons Laws of NY, Book 1, Statutes, § 120). Absence of facial ambiguity is, however, rarely, if ever, conclusive. The words men use are never absolutely certain in meaning; the limitations of finite man and the even greater limitations of his language see to that. Inquiry into the meaning of statutes is never foreclosed at the threshold; what happens is that often the inquiry into intention results in the conclusion that either there is no ambiguity in the statute, or that for policy or other reasons the prior history will be rejected in favor of the purportedly explicit statement of the statute (see, e.g., Matter of Barton v Lavine, 38 NY2d 785). Then it is often said with more pious solemnity than accuracy, that the clarity of the statute precludes inquiry into the antecedent legislative history.” Thus, legislative history may be used when it appears that the literal language of the statute contravenes the legislative intent or leads to an unreasonable or absurd result (Le Drugstore Etats Unis v New York State Bd. of Pharmacy, 33 NY2d 298, 302; United States v American Trucking Assns., 310 US 534, 543-544).
Here, as Justice Gagliardi noted in denying the motion, to hold plaintiff’s action barred produces the absurd result “that plaintiff’s cause of action was time barred years before he became the owner of the apartment building, years before the fire occurred, and that the cause of action existed only at a time when plaintiff did not have any standing to bring it.” As former Chief Judge Breitel observed, dissenting from the now overruled majority decision in Mendel v Pittsburgh Plate Glass Co. (25 NY2d 340, 346-347), “[I]t is all but unthinkable that a person should be time-barred from prosecuting a cause of action before he ever had one. In those torts which give rise to a cause of action even without or before palpable damage, the limitations run from the commission of the wrong but there is also instanter a cause of action accrued as in libel, trespass and the like”.
Finally, it will not do to argue that to count the limita *1018 tions period from the date of injury exposes the municipality to liability which may ripen into injury many years after the injury-causing breach of duty. Limitation periods are established only by legislative act. Too short a period may be unreasonable (see United States v Kubrick, 444 US 111; Urie v Thompson, 337 US 163, 169-170; Fernandi v Strully, 35 NJ 434; Developments in the Law — Statutes of Limitations, 63 Harv L Rev 1177,1200), but otherwise the length of the period (and consequent duration of exposure) is a matter of policy for the Legislature to determine and into the wisdom of which we cannot inquire. Here, as the legislative history above discussed makes clear, the policy determination made was that an action was timely if commenced within one year and 90 days “ ‘after the happening of the event on which the claim is based/ i.e., from the time of the accident” (NY Legis Doc, 1959, No. 36, p 61). To hold that the period began at the earlier time of the breach of duty is to flout the policy determination made by the Legislature as shown by the foregoing history. Moreover, consistency with the underlying legislative purpose to provide for a person injured by municipal wrongdoing a cause of action requires that any ambiguity in the word “event” be construed in favor of the injured person (see Fernandi v Strully, supra, at p 440).
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur in Per Curiam opinion; Judge Meyer dissents and votes to reverse in an opinion in which Judge Fuchsberg concurs.
Order affirmed, with costs.